[Civil No. 4243.   Filed October 28, 1940.]

[106 Pac. (2d) 485.]

J. R. ATKINS and CHRISTINE ATKINS, Husband and Wife, Appellants, v. RALPH C. HOOKER, Appellee.

Messrs. O'Sullivan & Morgan, Mr. J. H. Morgan and Mr. Leo T. Stack, for Appellants.

Mr. T. J. Byrne, for Appellee.

ROSS, C. J.—The appellants, husband and wife, to whom we shall hereafter refer as plaintiffs, brought this action to condemn a private way of necessity over defendant Ralph C. Hooker's lands, through which their cattle might pass from plaintiffs' premises onto the public domain, to graze thereon. At the trial the other defendants were dismissed, it appearing that after the action was brought defendant Hooker acquired the land sought to be condemned. The court heard the case and denied plaintiffs the right to condemn for the purposes stated, and they have appealed.

The plaintiffs are the patentees of Section 34, Township 20 North, Range 5 West, and have lived thereon since 1933. This section is located in the Prescott National Forest Reserve, in Yavapai county, Arizona, and on that part of such reserve in which the odd-num-

bered sections are privately owned and the even-numbered sections, or most of them, are public lands. It is a livestock country and for years has been chiefly devoted to that industry. The livestock was originally turned loose on the range and grazed upon it as free commoners for years. After it was set apart as a forest reserve, the Secretary of Agriculture was authorized by Congress "to permit, regulate, or prohibit grazing in the national forests," etc. Page 1, The Use Book, described as "A Manual of Information about the National Forests."

All four sides of Section 34 are bounded by odd-numbered sections and the owners thereof have constructed barbed-wire fences between their lands and plaintiffs', so that there is no driveway or escape for cattle from Section 34 to other parts of the forest reserve, and the grazing capacity of their section is only about 25 head. Plaintiffs have developed water on Section 34 sufficient to water from 200 to 250 head, and have only 64 head. They wish to increase their herd to the maximum of their water supply and have applied to the forest service for a permit to range such cattle on Section 4 and other publicly owned sections in Townships 19 and 20 North, Ranges 5 and 6 West, situated south of their home place on Section 34.

The forest service investigated plaintiffs' application for permit and refused to give the permit. However, in a letter written May 4, 1939, by the Regional Forester at Albuquerque, New Mexico, to the plaintiff J. R. Atkins, it is stated, among other things:

" . . . You were informed that the Forest Service was ready and willing to grant you a permit on the Forest for 100 head of cattle as soon as you had secured sufficient water for the number of stock to be permitted. . . .

" . . . It is, therefore, suggested that you take the matter up with the Forest Supervisor who is ready and willing to approve your application for a limited

number of stock as soon as he is convinced of your ability to use the water on your place. . . .

" . . . In the event you can convince the Supervisor that your water is accessible to the Forest range and will actually be used for your stock on the Forest, there will be no difficulty in your securing a permit for a limited number of stock to be grazed on a community basis.

"In closing, I wish to assure you that there is no desire upon the part of the Forest Service to deny you a grazing permit on the Forest, and, as stated above, it is simply a matter of your having water accessible so that the range can be used. Therefore, I again suggest that you present evidence to the Forest Supervisor that you have access across the private lands and he will then be in position to approve your application for the number of stock that can use the range from your water."

The plaintiffs endeavored to purchase from Hooker a right of way for cattle over the extreme southeast corner of Section 33 so that their cattle would have ingress and egress to and from Section 34 onto some ten sections of public lands in Townships 19 and 20, Ranges 5 and 6 West, without success, and hence this action.

The statute under which this right is attempted to be secured is section 1332, Revised Code of 1928, as amended by chapter 25, Laws of 1929, which reads:

"Section 1332. Private Way of Necessity May Be Condemned; Defined. An owner or one entitled to the beneficial use of land, mines or mining claims and structures thereon, which is so situated with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity over, across, through, and on said premises, may condemn and take lands of such other, sufficient in area for the construction and maintenance of such private way of necessity. The term 'private way of necessity' as used herein shall mean a right-of-way on, over, across, or through the land of another for means of ingress and egress, and the construction and maintenance thereon of roads, overhead transmission lines,

pole lines, power lines, canals, ditches, flumes, pipe lines, drains and tramways for mining, milling, lumbering, agricultural, domestic or sanitary purposes."

██ Whether plaintiffs' lands would be benefited by giving them a private way over defendant's lands onto the public lands in the National Forest Reserve is dependent upon whether they have a right to graze their stock upon such public lands. They failed to plead or prove that they have such right. They rely upon the letter from the forest service, from which we have quoted, as tantamount to a permit. As we read that letter, however, there are two or three things plaintiffs must demonstrate to the satisfaction of the forest supervisor before he will grant the permit, as, for instance, that they have sufficient water on Section 34 and that the public lands in Townships 19 and 20, Ranges 5 and 6 West, are accessible to cattle from Section 34. Regulation G-2, page 4, The Use Book, reads:

"Reg. G-2. Every person must submit an application and secure a permit in accordance with these regulations before his stock can be allowed to graze on a national forest, except as hereinafter provided and unless otherwise authorized by the Secretary of Agriculture. . . . "

The plaintiffs do not fall within any of the exceptions mentioned.

We think the right to condemn the adjoining property to give the plaintiffs a private way of necessity is dependent upon whether they have some rights in the property to which they seek access of which they may certainly avail themselves. In this case, even though plaintiffs be given a right of way, the forest service might refuse to issue them a permit. It is for that agency to determine whether the applicant for a permit has in all respects qualified himself under its rules and regulations to have a permit.

These permits are only privileges, to be conferred or refused as the forest service may determine.

For the foregoing reasons, the judgment of the lower court is affirmed.

LOCKWOOD and McALISTER, JJ., concur.