219 P.2d 1045

STEVENS (HARMON, Intervenor) v. STEVENS.

No. 4947.

Supreme Court of Arizona.
June 26, 1950.

James V. Robins, of Nogales, Knapp, Boyle, Bilby & Thompson, of Tucson, attorneys for appellants.

Duane Bird, Barry & Barry, of Nogales, attorneys for appellee.

STANFORD, Justice.

This is an action involving the rights to certain permits to graze livestock on lands of the national forest.

In 1913 George L. Stevens married appellee, Lucy Stevens. In 1919 George Stevens took out and received in his own name a permit from the supervisor of the Coronado National Forest in Santa Cruz County, Arizona, to graze livestock upon such lands. The couple jointly owned cattle as community property which were running upon their homestead and the National Forest. In 1929 George Stevens was divorced from his wife Lucy, but none of their property was divided by the divorce decree and they continued to hold the same after the divorce as tenants in common. In 1934 they rounded up and divided their cattle and the appellee's share of the cattle was removed from the ranch.

In 1941 George Stevens married appellant, Edilia C. Stevens. On August 14, 1944 George Stevens passed away leaving his surviving wife and a minor daughter, the issue of this last marriage.

In 1942 appellee Lucy Stevens brought an action against George Stevens to partition the land and also the grazing permit.

In Stevens' answer to the action he admitted that he and Lucy Stevens owned the land as tenants in common, but denied that Lucy Stevens had any interest in the forest grazing permit alleging that he was the sole permittee and licensee under the permit.

The record shows that the case was tried after the death of George Stevens.

The intervenor-appellant Rawson B. Harmon purchased the interest of Edilia C. Stevens and her minor child in the property of the estate of George Stevens, accounting for his appearance as intervenor in the case.

Appellee claims in her complaint:

"That each the plaintiff and the defendant has an undivided one-half interest in.

304

fee in the hereinbefore described real property and that no other persons are interested or have any estate therein or any lien or claim against the same.

"That said grazing permit is at the present time issued to, and in the name of, defendant, but that the same is appurtenant to and held by virtue of, and in connection with, said real property and is owned equally by plaintiff and defendant in undivided one-half shares each."

Defendant George Stevens, whose second wife is the administratrix of his estate, in his answer to the complaint, in addition to admitting that he and his former wife (appellee) " * * * owned, and now own, as tenants in common, the following described property situated in Santa Cruz County, State of Arizona, (Here the homestead and Monarch lode mining claim are described.)," also alleged that since 1929 he had paid the taxes due the State of Arizona, the County of Santa Cruz and the school district, levied against said real estate in the total sum of $848.97, and by reason of same is the owner and holder of a lien on the share of plaintiff in and to said property.

During the trial of the instant case a stipulation was entered into for the division of the real property involved and upon rendition of judgment the trial court adhered to the stipulation in awarding to each of the parties their respective portion of the real estate.

The trial court also made the following disposition of the permit herein involved.

"It Is Further Ordered, Adjudged And Decreed that said Lucy Stevens, plaintiff above named, has an undivided one-half interest in and to that certain privilege and permit from the United States of America to graze and pasture one hundred eighteen (118) head of livestock upon the Stevens Allotment in the Santa Rita District of the Coronado National Forest, now held by said defendant Louise Easley, as administratrix of the estate of George Lewis Stevens, sometimes known as George L. Stevens, and sometimes known as G. L. Stevens, deceased.

"It Is Further Ordered, Adjudged And Decreed that said defendant Louise Easley, as administratrix of the estate of George Lewis Stevens, sometimes known as George L. Stevens, and sometimes known as G. L. Stevens, deceased, execute and file in the office at Tucson, Arizona, of the Forest Service of the Department of Agriculture of the United States of America, a waiver and relinquishment of said privilege and permit from the United States of America to graze and pasture one hundred eighteen (118) head of livestock upon the Stevens Allotment in the Santa Rita District of the Coronado National Forest and make application as such administratrix to said Forest Service for privilege and permit to graze and pasture fifty-nine (59) head of livestock in said Santa Rita District of said Coronado National Forest."

Since by the stipulation entered into between the parties as to the division of the real estate involved, the only and sole issue left for this court to determine on appeal is the correctness of the trial court's judgment disposing of the forest grazing permit, or preference, now held by the estate of George Lewis Stevens.

The testimony shows that although divorce was granted in this case in 1929, the parties jointly grazed their livestock upon the lands until September 12, 1934. On October 9, 1934, plaintiff and her ex-husband George L. Stevens exchanged the SE¼ of the SE¼ of section 30, township 21 south, range 16 east, G. & S. R. B. & M., Arizona, for the Monarch mining claim particularly described as United States Mineral Survey No. 2421 and patent No. 156397. The testimony in the case also shows that there was a spring at the Monarch mining claim, a well at the homestead place, and water place, or places, in the portion of the reserve upon which the Stevens had ranged their cattle.

Ed McFall testified that he was employed by the United States Government Forest Service; that he was a ranger, or range examiner; that he knew of the lands in question and that the Coronado National Forest was under the office in which he worked at that time. He further testified:

"Q. Mr. McFall, state whether or not there are any—no. State whether or not there were any waivers or releases of the Stevens preference or permit whatever made by Lucy Stevens. A. Not to my knowledge.

"Q. You have examined this file pretty carefully and there is nothing to take evidence upon but the file, is there? A. I don't find anything in the file."

The appellants claim that the courts of this state have no jurisdiction to determine the issue before it. They claim that neither the divorce complaint nor the decree of divorce in the case of Stevens v. Stevens filed in 1929 mentioned anything about the rights to the grazing preferences. It is appellants' claim that the Secretary of Agriculture, through which the National Forests are administered, has exclusive jurisdiction over its grazing permits and preferences.

Under date of October 30, 1944, the forest service directed a letter to appellee in which it stated:

"Our Forest Service attorney has examined the entire grazing permit file in the G. L. Stevens case. Our review indicates that the grazing preference rested with Mr. G. L. Stevens at the time of his death because, during his life time and subsequent to the date of the divorce decree, he did not execute a waiver of grazing privileges in your behalf. Consequently, the grazing preference now rests with the G. L. Stevens estate.

"We do not know the nature of the court proceedings brought by you in 1941 and

which presumably are still pending. Possibly these proceedings had to do with your contention that you are entitled to one-half of the grazing preference. If, under this action, you obtain a judgment from an Arizona court, decreeing that you are entitled to one-half of any now existing grazing preference, and the administrator of the G. L. Stevens estate pursuant thereto or for any other reason executes a waiver of grazing preference, the Forest Supervisor will consider that waiver on its merits. Otherwise, in view of the unsettled G. L. Stevens estate, even disregarding the pending 1941 action, the Forest Service can, in our opinion, take no action toward division of the grazing preference. In other words, the Forest Service can only await the settlement of the estate."

Under the Forest Service Manual, Vol. 3, Grazing Section, which is the guide for the forest supervisors in matters of this character, we find the following under regulation G-4:

"Subject to the upper-limit restrictions and the protection and management needs of the range, a purchaser of either the permitted livestock or the base property of a permittee with an established grazing preference may be allowed renewal of preference in whole or in part, provided the purchaser of livestock only actually owns commensurate ranch property and the person from whom the purchase is made waives his preference to the government.

"Approval of grazing preference on account of purchase of base property or permitted livestock from a permittee who has used the range under temporary permit less than five consecutive years will not be allowed.

"Before a grazing preference is renewed on the basis of a waiver, satisfactory evidence must be submitted that the sale of base property or permitted livestock, or both, is bona fide."

Much is attached to the idea that appellee did not, at the time of her divorce and again at the time she divided her livestock, then have an understanding with her then husband about the permit to graze livestock. In October, 1934, and after the division of the livestock, there was an exchange for the Monarch mining claim. There can be no question as to the wisdom of that exchange by the two parties, the purpose being that they might acquire the spring at the Monarch mining claim and all the more make safe the permits that were granted to George L. Stevens by reason of the real property holdings adjacent to the forest lands over which he had a permit to graze cattle. There is no difference of opinion relative to the ownership of Lucy Stevens to one-half of the real property involved and, indeed, that has been determined by stipulation which was entered into at the close of the case in the superior court dividing as equally as possible the property owned by George L. Stevens and Lucy Stevens.

Section 63-301, A.C.A.1939, under the heading of "Community property—Power of disposition" says: "All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, * * * shall be the community property of the husband and wife. * * *" This case is similar to a situation where if the husband had taken title to real property in his own name during coverture, it still would be community property.

From our case of Cienega Cattle Co. v. Atkins, 59 Ariz. 287, 126 P.2d 481, 484, the appellant quotes the following: " * * * we have always believed that the forest service may use its reasonable discretion as to who shall graze cattle upon the reserve, and how many cattle may be so grazed, and that its judgment in this respect is binding on the courts, in the absence of an abuse of discretion."

Appellant also relies upon this statement from Atkins v. Hooker, 56 Ariz. 197, 106 P.2d 485, 486: " * * * It is for that agency to determine whether the applicant for a permit has in all respects qualified himself under its rules and regulations to have a permit. * * *"

The applicable law as established in the Federal court is set forth in Bell v. Apache Maid Cattle Co., 9 Cir., 94 F.2d 847, 850: " * * * The allotment of grazing area is exclusively for the Forest Service. The courts cannot interfere with this prerogative. * * *"

To all of the above we agree for these cases have to do with the placing of grazing allotments under the control of the forest service. We understand that to mean that the forest service has the right to say when land should be grazed; how many head of livestock should be grazed thereon; who is entitled to a grazing permit, and other things in connection therewith, but those cases do not hold that the court does not have jurisdiction over the matter of division of former community property now held by the parties as their heirs and assignees which is presented in the instant case. This court has jurisdiction of the parties and the subject matter of the litigation and authority to determine the rights of appellee in the community property of herself and deceased George Stevens. Consequently it has the power to direct appellant to perform such acts as are necessary to enable the forest service to issue a grazing permit for one-half of the livestock covered by the original permit provided it deems it proper and wise to do so.

After the death of George L. Stevens his cattle were sold by the administratrix of his estate and a non-use permit to graze and pasture cattle upon the Stevens' allottment in the Santa Rita District of the Coronado National Forest was issued by the United States of America to said administratrix, in her representative capacity, and such is the present status of the permit which is still in full force and effect.

308

This court holds that the permit and privilege to graze cattle upon the said Coronado National Forest was a valuable community asset and should be treated as community property of appellee Lucy Stevens and her ex-husband George L. Stevens at the time of said divorce and that appellee Lucy Stevens has an undivided one-half interest in and to said permit, with privileges and limitations that go with it as established by the Secretary of Agriculture through the National Forest Service. That it is the duty of the administratrix of the estate of George L. Stevens to perform all acts necessary to accomplish a division of said permit into halves according to the judgment of the trial court.

Therefore, in all respects, the judgment of the trial court is affirmed.

Concurring:

LA PRADE, C. J., and UDALL, PHELPS and DE CONCINI, JJ., concur.